```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION
```

```
AZEEZ P. ADEDUNTAN,                   *
VICTORY VASCULAR & GENERAL
SURGERY OF GEORGIA, P.C.              *

       Plaintiffs,                    *

vs.                                   *   CASE NO. 3:04-CV-65 (CDL)

HOSPITAL AUTHORITY OF CLARKE          *
COUNTY d/b/a ATHENS REGIONAL
MEDICAL CENTER, ATHENS REGIONAL       *
MEDICAL CENTER, INC., ATHENS
REGIONAL HEALTH SERVICES, INC.,       *
ATHENS VASCULAR SURGERY, P.C.,
DAVID M. SAILORS, MARK J.             *
CONSTANTINO,
                                      *
       Defendants.
                                      *
```

O R D E R

Plaintiff Dr. Azeez P. Adeduntan and the ARMC Defendants have filed motions for summary judgment on the ARMC Defendants' counterclaim for attorney's fees. For the following reasons, the ARMC Defendants' motion (Doc. 125) is granted as to Athens Regional Medical Center, Inc.'s entitlement to recover its attorney's fees, and Plaintiff's motion (Doc. 134) is denied. The Court further finds that it cannot determine the amount of fees recoverable from the present record, and that a hearing is necessary to determine the appropriate amount.

BACKGROUND

The Court previously granted summary judgment to Defendants Hospital Authority of Clarke County (doing business as Athens

Regional Medical Center), Athens Regional Medical Center, Inc., and Athens Regional Health Services, Inc. (collectively the "ARMC Defendants") on all of Plaintiffs' claims (Doc. 113).  The ARMC Defendants thereafter filed the presently pending Motion for Summary Judgment on their counterclaim for attorney's fees.  That claim is based upon a provision in a contract between Plaintiff Dr. Azeez Adeduntan ("Adeduntan") and Athens Regional Medical Center, Inc. ("Athens Regional").

In order to apply for medical staff appointment and privileges at Athens Regional, Adeduntan was required to execute an Applicant's Consent and Release ("Release").  (Doc. 126 Ex. 2.)  The Release generally releases Athens Regional from liability and requires Adeduntan to reimburse Athens Regional for costs and attorney's fees if he sues Athens Regional and does not prevail.  The ARMC Defendants contend that they are entitled to recover their attorney's fees based upon this contractual agreement.  Adeduntan responds that the agreement does not permit such recovery and has filed a cross motion for summary judgment.

## DISCUSSION

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  This case involves a matter

of contract interpretation. Summary judgment is appropriate if no genuine issue of material fact exists as to the meaning and applicability of the contract provision in question.

The interpretation of the contract in this case is governed by Georgia law. Georgia courts use "ordinary rules of contract construction" in the interpretation of contracts under Georgia law. *Bitumious Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996); *Park 'N Go of Ga., Inc. v. U.S. Fid. & Guar. Co.*, 266 Ga. 787, 791, 471 S.E.2d 500, 503 (1996). The purpose of contract construction is to ascertain the intention of the parties. "If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." O.C.G.A. § 13-2-3.

In order to determine the parties' intent, Georgia courts have created a three-step process for contract construction. *Simpson v. Infinity Select Ins. Co.*, 269 Ga. App. 679, 681, 605 S.E.2d 39, 41 (2004) (citation omitted). First, the court must determine if the language of the contract is "clear and unambiguous." *Id.* (citation omitted). This is a question of law for the court. O.C.G.A. § 13-2-1. If the language is "clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible [by the trial court]." *Estate of Sam Farkas, Inc., v. Clark*, 238 Ga. App. 115, 119-20, 517 S.E.2d 826, 820 (1999)

3

(internal quotation marks and citation omitted) (alteration in original). If, however, the language of the contract is ambiguous,[1] the court uses the rules of contract interpretation to give the terms their ordinary meaning. O.C.G.A. § 13-2-2; *Bituminous Cas.*, 73 F.3d at 337; *W. Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 676, 601 S.E.2d 363, 366 (2004). If after applying the rules of contract interpretation the contract is still ambiguous, the case must be submitted to the jury for a factual determination as to what the parties intended and what the language of the contract means. *Simpson*, 269 Ga. App. at 681, 605 S.E.2d at 42. As explained in the following discussion, the Court finds no such ambiguity that requires resolution by a jury. Therefore, summary judgment is the appropriate vehicle for deciding the issue presently before the Court.

*The Athens Regional Release*

Adeduntan applied for medical staff privileges four different times at Athens Regional. Each time he executed the same Release. The Release provides in relevant part:

> D. Release and Immunity
>
> By applying for appointment and clinical privileges, I accept the following conditions regardless of whether or not I am granted appointment or privileges and intend to be legally bound thereby. These conditions shall remain in

---

[1] An ambiguity is a "duplicity, indistinctness, or an uncertainty of meaning or expression." *Thomas v. B&I Lending, LLC,* 261 Ga. App. 39, 41, 581 S.E.2d 631, 634 (2003) (citation omitted). "[A] mere lack of clarity on causal reading is not the criterion for determining whether a contract is afflicted with ambiguity . . . ." *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 679, 34 S.E.2d 839, 845 (1945).

effect for the duration of any term of appointment I may be granted:

    1.    To the fullest extent permitted by law, I extend absolute immunity to, and release from any and all liability, and agree not to sue the Hospital, its authorized representatives and any third parties, as defined below, for any action, recommendation, reports, statement, communications, or disclosures involving me, which are made, taken, or received by this Hospital or its authorized representatives relating, but not limited to the following:

        (a)    application for appointment or clinical privileges, including temporary privileges;

        (b)    periodic reappraisals undertaken for reappointment or for increase or decrease in clinical privileges;

        (©)    proceedings for suspension or reduction of clinical privileges or for denial or revocation of appointment, or any other disciplinary action;

        . . .

        (I)    matters or inquiries concerning professional qualifications, credentials, clinical competence, character, mental or emotional stability, physical condition, ethics, or behavior; and

        (j)    any other matter that might directly or indirectly have an effect on my competence, on patient care or on the orderly operation of this or any other hospital or health care facility.

        . . .

    3.    The term "Hospital and its authorized representatives" means the Athens Regional Medical Center and any of the following individuals who have any responsibility for obtaining or evaluating my credentials, or

>          acting upon my application or conduct in the
>          Hospital:
>
>          . . .
>
>     6.   **If, notwithstanding the provisions in this Section D, I institute legal action against the Hospital and/or its Medical Staff members and do not prevail, I agree to reimburse the Hospital and any Medical Staff members named in the action for any and all costs incurred in defending such legal action, including reasonable attorneys' fees.**

(Release 2-4)(emphasis added).

The ARMC defendants contend that this language is clear and unambiguous. They maintain that since they prevailed on their previous motions for summary judgment as to Plaintiffs' claims against them, they are entitled to recover their costs incurred in defending this action based upon this contractual provision.

Adeduntan responds that this release does not apply to the instant case because (1) the Release does not define "Hospital," and therefore it is ambiguous as to who is to be reimbursed under the contract; (2) the Release is limited to actions arising from Adeduntan's application and reapplication for appointment and privileges; (3) the Release has a temporal limit—it applies only during a term of appointment; (4) the Peer Review Resolution Agreement ("PRRA") extinguishes the Release; and (5) the ARMC Defendants' affidavits are insufficient to entitle them to attorney's fees. The Court addresses each of Adeduntan's arguments in turn.

6

1. <u>Definition of "Hospital"</u>

Dr. Adeduntan argues that the word "Hospital" in the Release is ambiguous. Therefore, he contends, when construing the contract against the drafter, the word "Hospital" cannot refer to any of the ARMC Defendants. The Court finds that there is no ambiguity regarding the term "Hospital"—it refers to Athens Regional.

First, the Release is clearly on Athens Regional letterhead. Second, Adeduntan knew he was applying for appointment and privileges at Athens Regional and not some ambiguous "Hospital." Finally, the Release defines "Hospital and its authorized representatives" as "the Athens Regional Medical Center and any of the following individuals . . . ." (Release at 3.) Therefore, "Hospital" unambiguously means Athens Regional.

The Court further finds, however, that the term "Hospital" does not include the Hospital Authority of Clarke County or Athens Regional Health Services. Had Athens Regional intended to include the Hospital Authority or Athens Regional Health Services in the Release, it could have done so.[2]

2. <u>Limited to Actions Arising from Application</u>

Next, Dr. Adeduntan claims that the language of the Release makes it "manifestly evident that the parties intended the application of the document [to] be limited to those circumstances

---

[2] For example, all three ARMC Defendants were separately set out in the release provision of the PRRA. (PRRA ¶ 4.)

7

whereby an applicant institutes an action against the hospital based upon an application or reapplication for Medical Staff appointment and clinical privileges . . . ." (Pl.'s Mem. in Supp. of Mot. for Summ. J. 6.) Therefore, Adeduntan contends that the Release does not cover the claims in the instant case because the claims are not based upon an application or reapplication for appointment or privileges. The Court rejects Adeduntan's narrow interpretation of the Release.

The Release specifically releases the Hospital from liability for *any action* taken by the Hospital regarding a number of different subjects—the first two being "application for appointment or clinical privileges" and "periodic reappraisals undertaken for reappointment or for increase or decrease in clinical privileges." (*See* Release at D.1(a)-(j).) The remaining eight provisions cover a variety of actions the Hospital could take against a medical staff member including "proceedings for suspension or reduction of clinical privileges or for denial or revocation of appointment, or any other disciplinary action" and "Hospital and Medical Staff quality assessment/improvement requirements and programs." (Release D.1(c), (f).) Therefore, the Release is not limited to actions arising only from application or reapplication for appointment and privileges.

Additionally, even if the Court were to agree with Plaintiff that the Release is limited to actions arising from application or reapplication for appointment and privileges, the claims against the

ARMC Defendants fall within that category. (*See* Compl. ¶¶ 22-25.)[3] Adeduntan claims that because he has not asked for reinstatement of his privileges or reappointment to the medical staff, his claims against the ARMC Defendants are not based upon his application or reapplication for appointment or privileges. This argument is contrary to Plaintiff's own Complaint where he argues that the failure to renew his appointment and privileges effectively resulted in his termination. (*See Id.*) Consequently, the claims made against the ARMC Defendants do fall within the scope of the Release.

3. Temporal Limitation

Adeduntan claims that the Release is limited temporally by clause D which states that the "conditions shall remain in effect for the duration of any term of appointment [a doctor] may be granted." The Court agrees that this language creates an ambiguity in the contract. Therefore, the Court must apply the rules of contract construction in order to eliminate the ambiguity. *Bituminous Cas.*, 73 F.3d at 337. "A contract should be construed by examining the agreement in its entirety and not merely isolated clauses and provisions thereof." *Jones v. Destiny Indus., Inc.*, 226 Ga. App. 6, 6, 485 S.E.2d 225, 226 (1997). Therefore, the Court "should avoid any construction that renders portions of the contract language meaningless." *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 74, 538

---

[3] Adeduntan claimed that the ARMC Defendants engaged in a discriminatory pattern of behavior that resulted in the failure to renew his appointment and privileges.

S.E.2d 886, 888 (2000). Furthermore, "[a] contract must be construed so as to reconcile its different provisions and to reject a construction that leads to a contradiction." *Anderson v. Anderson*, 274 Ga. 224, 228, 552 S.E.2d 801, 804 (2001).

Dr. Adeduntan's interpretation of Release paragraph D, that the terms of the Release are valid for only the duration of an appointment, creates a contradiction in the contract that ignores other contractual language. Specifically, paragraph D states that the applicant "accept[s] the following conditions regardless of whether or not [he is] granted appointment and privileges and intend[s] to be legally bound thereby." The next sentence then states that the conditions "shall remain in effect for the duration of any term of appointment [he] may be granted." Were the conditions to remain in effect *only* for the duration of a doctor's appointment, the language that states that the Release applies even if an applicant is not granted appointment or privileges would be rendered a nullity. A reasonable construction of the two sentences, when read together, yields the interpretation that the terms and conditions of the Release apply whether or not a person is granted appointment or privileges. The applicant recognizes that this includes, but is not limited to, the duration of any term of appointment.

The Court finds unpersuasive Plaintiff's argument that in essence an "only" should be read into the final sentence of paragraph D. The Release is not temporally limited to the term of

10

appointment for a doctor. Consequently, the Release applies to the instant case.

    4.  <u>PRRA</u>

Adeduntan next claims that the PRRA extinguishes any prior agreement between himself and the ARMC Defendants. Adeduntan bases this argument on the PRRA merger clause which states that the PRRA "constitutes the entire agreement between the parties and there are no other understandings, or agreements, written or oral, between them on the subject." This argument disregards relevant Georgia precedent and the separate nature of the two agreements.

In Georgia, "[o]ne simple contract does not merge or extinguish another." *Bowen v. Budd*, 164 Ga. App. 406, 407, 297 S.E.2d 334, 336 (1982) (quoting *Wylly v. Collins & Co.*, 9 Ga. 223, 224 (1851)). In *Bowen v. Budd*, the Georgia Court of Appeals explained that a merger clause in a partnership agreement that stated that "[t]his writing constitutes the entire Agreement among the parties and supersedes any prior understanding or Agreements among them respecting the subject matter" did not extinguish the original syndication agreement, requiring a syndication fee, between the same parties.[4] Since the parties had entered into two separate contracts dealing with two

---

[4] The syndication agreement "dealt with the terms by which prospective subscribers might purchase percentages of a proposed partnership and included . . . a breakdown of the investment costs . . . among which was a syndication fee." *Bowen*, 164 Ga. App. at 407, 297 S.E.2d at 336.

11

different subject matters, the court held that the "former agreement did not merge into the subsequent one[]." *Id.* at 408, 336.

Here the parties have also entered into two separate contracts dealing with different subject matters. First, the parties entered into a contract dealing with Adeduntan's application (and reapplication) for appointment and privileges at Athens Regional. The parties then subsequently entered into a contract regarding Dr. Adeduntan's peer review case and certain conditions to be fulfilled as a result of his peer review. Since these contracts are separate contracts dealing with different (albeit related) subject matters, the merger clause in the PRRA does not extinguish the Release. Therefore, the Release and the conditions contained therein are valid and enforceable.

### 5. Affidavits and Amount of Fees

Based on the foregoing, the Court finds that Athens Regional is entitled to recover its litigation expenses, including attorney's fees, reasonably incurred in defending Dr. Adeduntan's lawsuit against it. Those expenses shall be limited to expenses incurred by Athens Regional as to the claims made against Athens Regional. Athens Regional shall not recover expenses incurred in defense of any other defendants. The Court cannot determine from the present record the amount of expenses that are directly attributable to a defense of the claims made against Athens Regional. Accordingly, a hearing shall be scheduled to permit Athens Regional to present evidence as

12

to that amount and to permit Adeduntan to contest that amount. That hearing shall be limited to the amount of expenses, and no evidence or argument will be received as to Athens Regional's entitlement to recover its reasonable fees and expenses arising from its defense of the claims Adeduntan asserted against Athens Regional.

The Court understands that there is overlapping of the defense in this case and that it is conceivable that the same amount of legal work may have been required had Athens Regional been the only defendant. However, that is not clear from the present record. At the hearing, Athens Regional should be prepared to exclude from its expense claim any legal work that was done on behalf of the other defendants that would not have been necessary to the defense of Athens Regional.

Based on the Court's ruling, Adeduntan's argument regarding the affidavits is moot.

## CONCLUSION

The Court finds that Athens Regional is entitled to recover the litigation expenses, including attorney's fees, that it incurred as a result of having to defend against the claims made against it by Dr. Adeduntan. Accordingly, to this extent, the ARMC Defendants' Motion for Summary Judgment (Doc. 125) is granted and Plaintiff's Motion for Summary Judgment (Doc. 134) is denied. At this time, the Court makes no award of fees and expenses. The Court defers that

decision until after the hearing that will be scheduled regarding the amount of fees and expenses that is appropriate.

IT IS SO ORDERED, this 11th day of July, 2006.

                                              S/Clay D. Land
                                                    CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE